CENTRAL VICTORIA, INC., Plaintiff and Appellant, *v.* RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 8920.   Argued June 8, 1944.—Decided July 3, 1944.

Cayetano Coll y Cuchí and Cayetano Coll Pujol for appellant. *Jesús A. González, Acting Attorney General*, and *A. E. Franco Cabrero, Deputy Attorney General*, for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

Section 1 of Act No. 267, Laws of Puerto Rico, 1938 (p. 515), which took effect on May 15, 1938, provided for an internal revenue tax "of one-fourth (¼) of a cent on each gallon of molasses brought into, or manufactured, sold, consumed, or otherwise disposed of for consumption in, Puerto Rico . . . ".

This is an appeal from a judgment of the district court dismissing the suit of the plaintiff for the refund of $1,538.12 which the Treasurer collected, asserting that the plaintiff owed the same by virtue of the said statute for the sale of more than 600,000 gallons of molasses.

The molasses in question had already been manufactured when Act No. 267 became effective on May 15, 1938. The Treasurer, however, contended successfully in the lower court that the said molasses was sold after May 15, 1938, and that the said taxes had therefore been properly collected.

This case is governed by the terms of a written contract entered into by the plaintiff, as seller, and another corporation, as purchaser, reading in part as follows:

"Section I. Quantity. The Seller agrees to sell and deliver to the Purchaser, and the Purchaser agrees to buy from and pay to the Seller at the prices and upon the terms hereinafter set forth, all of the run of the mill blackstrap molasses produced by the Seller from its Centrals known as Central 'Carmen', Central 'San Vicente', Central 'Victoria' and Central 'Coloso', during 1938 crop, less, up to twenty (20) per cent of the production used or sold by these sugar mills for local consumption in the Island of Puerto Rico.

"Section II. Quality. The quality as run from the centrifugals, free from any adulteration, and without the addition of water, steam, lime or any other foreign substance. The molasses is guaranteed to be no less than 43 Baume or 82 Brix.

"Section III. Delivery. Delivery to be made to steamers to be furnished by Purchaser, the first cargo to commence loading in San Juan and/or Mayagüez, Puerto Rico, and finish at any of such ports at Seller's option, during March 1938, and the subsequent cargoes

in April, May and June 1938, upon fifteen days notice given by Seller. Should Purchaser fail to have steamers on hand to receive the molasses within the time designated above, payment is to be made to the Seller for the designated shipments against deposit by Seller of the corresponding Custodian Receipt. . . .

"Section IV. Price. Four and one quarter (4¼¢) cents per U. S. Wine gallon F. O. B. Steamer at San Juan and/or Mayagüez, Puerto Rico. In the event the molasses delivered shall test under or over 52 Total Sugars by the Clerget Method then the price shall be decreased or increased, as the case may be, by such proportion of the fixed price of 4¼¢ as such underage or average in degree, or fractions thereof, bears to 52. It is understood that F. O. B. means molasses delivered on board steamer. Any loading, dockages, or taxes or any expenses incidental to loading these molasses on the steamer is to be for account of Purchaser.

"Section V. Analysis. A representative bleeders sample of each cargo is to be taken from the pipe line of the dock in Puerto Rico during the loading. Should Purchaser fail to have steamers on hand to receive the molasses within the time above designated, representative samples of the molasses deposited in José Romaguera e Hijos tanks at San Juan and/or Mayagüez, Puerto Rico, will be taken by representatives of Purchaser and Seller. These samples in any of these cases, are to be carefully sealed and put up into three sets, one to be sent to the Purchaser, one to the Seller and the further set to the New York Sugar Trade Laboratory Inc. The average of the two nearest analysis to be taken as the final analysis.

"    *    *    *    *    *    *    *

"Section VII. Marine Insurance. To be covered by Purchaser, the cost of premium for Purchaser's account.

"Section VIII. Payments. Shall be made as follows: Ninety-five (95%) per cent against full shipping documents, or the delivery of the corresponding Custodian Receipt (in case that steamer cannot be furnished on time by the Purchaser), and the balance as soon as the final analysis has been determined and in no event later than thirty days from the date each cargo has been discharged, or samples taken at Romaguera's tanks."

The plaintiff established without question that the molasses involved herein was manufactured prior to May 15, 1938. But we are unable to accept its contention that the

sale thereof had also been completely consummated prior to that date. On the contrary, the conclusion is inevitable that the sale as such, under a contract as herein to sell part of the entire output of molasses of a Central during a future season, takes place upon delivery of the molasses in question to the buyer or to his representative. And here all such deliveries were made on dates after May 15, 1938. The sales, as taxable events, therefore took place after Act No. 267 providing for a tax on the sale of molasses, had gone into effect.

To agree with the appellant that, for tax purposes, the sale of the molasses involved herein took place on the date it entered into a contract to sell part of its molasses when it came into existence at a subsequent date, would require us to overrule opinions of this court to the effect that the taxable event classified as a "sale" takes place under the circumstances herein upon delivery to the purchaser or to his representative. (*López & Morán* v. *Sobs. de Ezquiaga*, 34 P.R.R. 75; *West India Oil Co.* (*P. R.*) v. *Treasurer*, 54 P. R.R. 695; *Monagas* v. *Central Eureka, Inc.*, 41 P.R.R. 797). We find no reason to overrule those cases, and in view of the fact that delivery to the purchaser under the contract herein was admittedly after the Act in question had taken effect, those transactions were properly taxed as sales.

Without examining the question of whether the written contract could be so varied, we find nothing in the record to justify the contention of the appellant that, even assuming the rule as we have stated it, oral arrangements had been made under which delivery had already been effected by the seller to a third person representing the purchaser prior to the effective date of the taxing statute.

The judgment of the district court will be affirmed.